# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| KE'VON TRAMAR LOSTON | CIVIL ACTION NO. 6:16-cv-00964 |
|---|---|
| VERSUS | JUDGE TERRY A. DOUGHTY |
| ST. MARY PARISH SHERIFF'S OFFICE, ET AL. | MAG. JUDGE PATRICK J. HANNA |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 59] filed by Allstate Insurance Company ("Allstate"). Allstate moves the Court for a declaration that it does not provide insurance coverage for the claims asserted by Plaintiff Ke'von Loston ("Loston") against Defendant Richelle Bowman ("Bowman") and that it does not have a duty or a contractual obligation to provide legal representation or a defense to the claims asserted by Loston.

On September 25, 2018, Loston filed a response [Doc. No. 78] indicating that he did not oppose the Motion for Summary Judgment. Bowman filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 98].

For the following reasons, Allstate's Motion for Summary Judgment is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

On or about July 2, 2015, Loston was arrested by the St. Mary Parish's Sheriff's Office for the crime of larceny or theft of an ATV. However, the charges were later dismissed.

The stolen ATV 4-wheeler belonged to Bowman's son. Loston alleges that, subsequent to his arrest, Bowman posted a photograph of him on Facebook and stated that he was the "thug" who stole her son's ATV.

On June 15, 2016, Loston brought suit in the United States District Court, Western District of Louisiana, Lafayette Division, asserting claims against the St. Mary Parish Sheriff's Office, Sheriff Mark A. Hebert, Sheriff Deputy Sennet Wiggins, Sheriff Deputy Beau Martin (collectively "the Sheriff's Office Defendants"), and Bowman. Loston alleges that the Sheriff's Office Defendants, operating under the color of law, wrongfully abused the judicial process to have him arrested and subsequently jailed for felony theft of an ATV. Loston further alleges that Bowman publicly defamed him by "circulating false allegations on social media resulting in thousands of views by persons in the community and beyond." [Doc. No. 1, ¶ 7].

Loston further alleges that, "[a]s a direct result of Defendants' misconduct, which resulted in Plaintiff's wrongful arrest, and detention, Plaintiff sustained substantial damages, including, but not necessarily limited to, mental and psychological anguish, and lost wages during and after the period of detention." *Id.* at ¶ 8.

Loston explains that he brought suit against the Sheriff's Office Defendants and Bowman "to redress the deprivation under color of law of Plaintiff's rights as secured by the United States and Louisiana Constitutions and the defamation, with resulting damages, including, but not limited to mental and psychological anguish." *Id.* at ¶ 9.

However, in paragraph 36 of the Complaint, Loston makes clear that he brought suit against Bowman for only the following:

A. In making false and defamatory statements;

B. In making false and defamatory statements and publishing same on social media that she knew or should have known would reach a wide variety of the public;

C. In causing embarrassment and injuries to Plaintiff in damaging his reputation; and

2

D. All other acts of negligence, etc. that will be shown at the trial of this matter.

[Doc. No. 1, ¶ 36].

Allstate issued a standard homeowner's policy to Bowman, bearing policy number 921098588, with a coverage period of August 19, 2014, to August 19, 2015.

Subsequent to the filing of Loston's Complaint, Bowman tendered the claims asserted to Allstate for defense and indemnity.

On December 21, 2018, Judge John W. deGravelles granted summary judgment in favor of the Sheriff's Office Defendants and dismissed all claims against them. He further denied Bowman's Motion for Summary Judgment, finding that there was a genuine issue of material fact whether she committed the tort of defamation of Louisiana law. He took the instant motion under advisement.

On April 2, 2019, the matter was reassigned to the undersigned. The instant motion is ripe for review.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "'material' if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "'genuine' if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party." *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Application of Policy Provisions to the Allegations of the Complaint

#### 1. Coverage

The interpretation of an insurance contract is usually a legal question that can be resolved by means of a motion for summary judgment. *Bernard v. Ellis*, 11–2377 (La. 07/02/12), 111 So.3d 995; *Cutsinger v. Redfern*, 08–2607 (La.05/22/09), 12 So.3d 945. However, summary judgment will not issue "unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Schelmety v. Yamaha Motor Corp.*, 50,586 (La. App. 2d Cir. 2016), 193 So.3d 194, 197-98 (citing *USA Elliott v. Continental Casualty Co.*, 06–1505 (La. 02/22/07), 949 So.2d 1247; *Reynolds v. Select Properties, Ltd.*, 93–1480 (La. 04/11/94), 634 So.2d 1180).

An insurance policy is a contract between the parties and is subject to the general rules of contract interpretation under the Louisiana Civil Code. *See Succession of Fannaly v. Lafayette Ins. Co.,* 2001-1144, p. 2 (La. 1/15/02); 805 So. 2d 1134, 1135. Words in an insurance contract must be given their general meaning, and courts must enforce the clear and unambiguous

4

language of the policy. *See* LA. CIV. CODE ARTS. 2046 & 2047. Any ambiguities must be construed in favor of the insured. *See, e.g., Exxon Corporation v. St. Paul Fire and Marine Insurance Company*, 129 F.3d 781, 788 (5th Cir. 1997).

However, insurance companies have the right to limit coverage, as long as the limitations do not conflict with statutory provisions or public policy. *See Ducote v. Koch Pipeline Co., L.P.*, 98-0942 (La.1/20/99), 730 So.2d 432; *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183. While the insured bears the burden of proving that the claim in questions falls within the policy coverage, *see Doerr v. Mobile Oil Corp.*, 774 So.2d 199, 124 (La. 2000), the insurer bears the burden of proving that the policy limits or exclusions apply. *See Tunstall v. Stierwald,* 809 So.2d 916, 921 (La. 2002).

In this case, the Policy provides:

**General**

**Definitions Used In This Policy**

1.     **"You"** or **"your"** - means a person named on the Policy Declarations as the insured and that person's resident spouse.

2.     **"Allstate," "we[,]" "us," or "our"** - means the company named on the Policy Declarations.

3.     **"Insured person(s)"** means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any dependent person in **your** care.

4.     **"Bodily injury"** - means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

or any resulting symptoms, effect, condition, disease or illness related to (a)through (e) listed above.

. . .

9. **"Occurrence"** - means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in **bodily injury** or **property damage**.

. . .

**Section II-Family Liability And Guest Medical Protection**

**Coverage X**

**Family Liability Protection**

**Losses We Cover Under Coverage X:**

Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or p**roperty damage** arising from an **occurrence** to which this policy applies, and is covered under this part of the policy.

We may investigate or settle any claim or suit for covered damages against an **insured person**, regardless of the amount of damages sought. If an **insured person** is sued for covered damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability by the payment of judgments and settlements.

**Losses We Do Not Cover Under Coverage X:**

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may be reasonably expected to result from the intentional or criminal acts or omissions of, the **insured person**. This exclusion applies even if:

a) such insured person lacks the mental capacity to govern his or her own conduct;

b) such bodily injury or property damage is of a different kind or degree than intended or reasonable expected; or

c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether such **insured person** is actually charged with, or

convicted of, a crime.

[Doc. No. 59-5, Policy, Exh. 3].

Allstate contends that the alleged defamatory statements made or caused by Bowman do not result from an "occurrence," as defined by the policy. Allstate contends further that Loston does not seek damages arising out of a physical injury to some person. It points out that Loston's Complaint does not contain allegations that there was an accident resulting in "bodily injury" or actual physical injury. Finally, Allstate contends that a claim of defamation is excluded from coverage under the Policy because defamation is an "intentional act."

Bowman relies on the Louisiana Fourth Circuit Court of Appeals case of *Williamson v Historic Hurstville Ass'n*, 556 So.2d 103 (La. App. 4 Cri. 1990), to support her argument that the Policy does not unambiguously exclude coverage and that the allegations against her amount to bodily injury and/or property damage. Additionally, Bowman argues that, under the more recent Louisiana Supreme Court case of *Costello v. Hardy*, 03-1146 (La. 01/21/04), 864 So.2d 129, Loston is not required to prove that she acted intentionally with regard to the defamation claim, but that she had fault of negligence or greater, and, therefore, the intentional act exclusion does not apply.

Having reviewed the Complaint and the Policy and applied the law, the Court finds that Loston's sole claim against Bowman of defamation is not an "occurrence" as the term is defined in the Policy, and, thus, the Policy provides no coverage. As set forth above, the Policy defines occurrence as an "accident . . . resulting in bodily injury or property damage." [Doc. No. 59-5, Policy, Exh. 3]. Even assuming that Bowman's alleged defamation of Loston could constitute an accident, Loston has not alleged facts to show that the accident resulted in bodily injury. "Bodily

7

injury" is actually defined under the Policy as "physical harm to the body," but the allegations in the Complaint against Bowman are limited to mental and psychological anguish. The applicable Policy unambiguously excluded claims for emotional or psychological injury when unaccompanied by "physical harm." Therefore, Bowman does not have coverage on this basis.

Although Allstate did not address this provision, Bowman contends that she is also covered under the Policy because Loston's claims for economic losses constitute property damages. This argument is not supported by the Complaint either. First, the Policy itself defines "Property Damage" as "physical injury to or destruction of tangible property, including the loss of its use resulting from such physical injury or destruction." [Doc. No. 59-5, Policy, Exh. 3]. It would appear to the Court that Loston's claims for lost wages and economic losses in the form of attorneys' fees do not fall within the plain and unambiguous language of the definition. Nevertheless, even if these losses could constitute property damage, Loston sought recovery in the form of lost wages "during and after the period of detention" and attorneys' fees under the federal civil rights statutes. [Doc. No. 1, ¶¶ 8, 39]. A careful review of the Complaint makes clear that Bowman is accused of defaming Loston **after** he was arrested. [Doc. No. 1, ¶¶ 28-29 ("Plaintiff was subsequently arrested at the St. Mary Parish Sheriff's Office and charged with theft. . .**Subsequently,** Richelle Bowman posted a photograph of Plaintiff on Facebook and stated that he was the 'thug' who had stolen her son's ATV 4-wheeler."). To the extent that Loston claims lost wages as a result of his detention, there are no allegations to support that claim for damages against Bowman. Likewise, it is axiomatic under Louisiana law that attorneys' fees are only recoverable by statute or contract. Loston cites only the federal civil rights statutes to support his clam for attorneys' fees, and he has asserted no civil rights claims

against Bowman. Thus, there is no property damages claim against Bowman based on the lost wages and attorneys' fees.

Finally, to the extent that Bowman relies on the Louisiana Fourth Circuit Court of Appeals *Williamson* case, her reliance is misplaced. That case is factually distinguishable in at least two regards. First, in *Williamson*, the policy defined "bodily injury" as meaning "'bodily injury, sickness or disease . . ." 556 So.3d at 105. The current and applicable Policy herein requires specifically that there be "**physical** harm to the body, including sickness or disease." [Doc. No. 59-5, Policy, Exh. 3 (emphasis added)]. Thus, the *Williamson* decision offers no insight as to how Louisiana courts interpret the precise language before this Court.

With regard to property damage, the *Williamson* case is factually distinguishable as well. In that case, the plaintiff specifically alleged that the defendant's defamation had caused him loss of business revenue, an allegation not present in this case.

The *Williamson* court, relying on a 1978 Louisiana Third Circuit Court of Appeals case, states that "'a person's reputation is his property" and that, thus, loss of reputation could constitute property damage under the Allstate Policy language. *Id.* at 107 (quoting *Lees v. Smith*, 363 So.2d 974, 980 (La. App. 3d Cir. 1978)). To this extent, Loston has certainly asserted a claim for loss of reputation against Bowman. If the Court were to agree with *Williamson*, then, again assuming that Bowman's alleged defamation was an "accident," Loston's claim for loss of reputation damages would be covered by the property damages language of the Policy.

The Court does not agree. Instead, the Court finds more persuasive decisions of other courts, including the United States Fifth Circuit Court of Appeals, which have rejected *Williamson's* reasoning. The Fifth Circuit explained its rejection in *DeLoach v. HGI*

*Catastrophe Servs., L.L.C.*, 460 F. App'x 314 (5th Cir. 2012), when considering a policy that defined property damage as "Physical injury to tangible property, including all resulting loss of use of that property . . .; or  . . .Loss of use of tangible property that is not physically injured." *Id.* at 316.  The *DeLoach* Court explained.

> Hammerman sought summary judgment against CCC on the contention that reputational damage constituted "property damage" within the meaning of the policy, and therefore triggered CCC's duty to defend. . . . Hammerman based its argument on two decisions of the Louisiana Court of Appeal holding that loss of reputation qualified as property damage for purposes insurance coverage: *Lees v. Smith*, 363 So.2d 974 (La. Ct. App. 3 Cir. 1978), and *Williamson v. Historic Hurstville Ass'n*, 556 So.2d 103 (La. Ct. App. 4 Cir. 1990).
>
> As the district court thoroughly explained, previous decisions of this court have rejected the reasoning of *Lees* and *Williamson. See, e.g., Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc*., 954 F.2d 1075, 1079 (5th Cir. 1992) ("'[T]angible' property corresponds to the Louisiana civilian concept of 'corporeal' property.") (citing *City of New Orleans v. Baumer Foods, Inc*., 532 So.2d 1381, 1383 (La. 1988)); *Lamar Adver. Co. v. Cont'l Cas. Co*., 396 F.3d 654, 663 (5th Cir. 2005). In *Lamar Advertising* we interpreted a CCC policy virtually identical to the one at issue and stated:
>
> While it is true that in *Williamson*, the Louisiana Fourth Circuit Court of Appeal held that loss of profits constitutes injury to "tangible property," we find that the holding in *Williamson* does not compel us to depart from our more recent treatment of this issue in *Selective Insurance*. In *Williamson*, the complaint in the underlying action alleged that the defendant's defamatory remarks about the plaintiff and his business venture caused reputational injury, i.e., intangible property, and thereby, caused him consequential loss of profits. The Louisiana Fourth Circuit held that injury to reputation and loss of profitability constitute damages to "tangible property" within the meaning of a homeowner's policy that defined property damage as "physical injury to or destruction of tangible property including loss of its use." As Continental accurately points out, however, the court in *Williamson* based its interpretation of the policy on a Webster's Dictionary definition of the term tangible. The *Williamson* court considered neither the Louisiana Supreme Court's declaration that tangible property is corporeal property nor any provision of the Louisiana Civil Code in reaching this conclusion. Moreover, the *Williamson* court's broad interpretation of the term tangible would render meaningless the provision under Continental's policy agreeing to pay only those damages caused by physical damage to tangible property. Such an interpretation would make all damages recoverable under the policy. By contrast,

this court's interpretation of the terms tangible property as pronounced in *Selective Insurance*, is far more consonant with the language under Continental's policy and is consistent with Louisiana civil law methodology. Accordingly, we hold that loss of profits that do not flow from injury to tangible property is not a loss covered by this policy's property damage provision.

396 F.3d at 665 (internal citations and footnotes omitted). *Lamar Advertising* is dispositive of this appeal. "[I]n the absence of a subsequent state court decision or statutory amendment which makes this Court's [prior] decision clearly wrong, we are bound by a prior panel's interpretation of state law." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 271 n. 4 (5th Cir. 2003) (second alteration in original) (internal citations and quotation marks omitted). One's reputation is not tangible property, and the purely economic losses resulting from damage thereto are not "property damage" within the meaning of the policy.

*Id.* at 316-17.[1]

For all of these reasons, the Court finds that there was no occurrence under the Policy, and, thus, no coverage.[2]

### 2. Duty to Defend

The Court has found that Allstate's policy does not provide coverage for Loston's defamation claim against Bowman, but "[u]nder Louisiana law, an insurer's duty to defend suits brought against an insured is broader than its duty to indemnify the insured." *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005) (internal citations omitted). "Whether an insurer has a duty to defend is determined solely by 'comparing the allegations in the complaint against the insured with the terms of the policy' at issue -- the so-called 'eight corners' rule." *Id.* at 660 (citing references omitted). "If 'there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded,' the insurer must

---

[1] This decision underscores the Court's belief that none of Loston's claims of economic loss, even if asserted against Bowman, constitute property damage.

[2] The Court need not reach the parties' remaining arguments on the exclusion for intentional conduct.

defend the insured." *Id.* "Accordingly, 'assuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, if there would be both (1) coverage under the policy and (2) liability to the plaintiff.'" *Id.*

In this case, however, the only allegations against Bowman arise from her alleged defamation of Loston. The Court has found that these allegations, even if true, would not render Allstate liable for a judgment against Bowman. Accordingly, the Court finds that Allstate has no duty to defend Bowman.

## III. CONCLUSION

For the foregoing reasons, Allstate's Motion for Summary Judgment is GRANTED. The Court issues a declaratory judgment that Allstate does not provide insurance coverage for the claims asserted by Plaintiff against Defendant Richelle Bowman and that it does not have a duty or contractual obligation to provide legal representation or a defense to the claims asserted by Plaintiff.

MONROE, LOUISIANA, this 5th day of April, 2019.

                                                  TERRY A. DOUGHTY
                                        UNITED STATES DISTRICT JUDGE