# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| KE'VON TRAMAR LOSTON | CIVIL ACTION NO. 6:16-cv-00964 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| ST. MARY PARISH SHERIFF'S OFFICE, ET AL. | MAG. JUDGE PATRICK J. HANNA |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 113] filed by Defendant Lana Richelle Bowman ("Bowman"). Bowman moves for summary judgment on Plaintiff Ke'von Tramar Loston's ("Loston") remaining defamation claim against her.

On June 6, 2019, Loston filed a Motion to Strike Affidavit and Attachments and a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 117].

On June 14, 2019, Bowman filed an opposition to the Motion to Strike [Doc. No. 119].

For the following reasons, Loston's Motion to Strike is DENIED, and Bowman's Motion for Summary Judgment is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

In June 2015, Bowman's son, John Cody Bowman ("Cody Bowman"), advertised an ATV for sale on Craigslist. After having conversations with a person in St. Mary Parish interested in purchasing the vehicle, he took the ATV there for a viewing. Cody Bowman met a young black male there who took the ATV and never returned it.

Cody Bowman later looked on Facebook and identified Loston as the person he believed had stolen his ATV.

On June 25, 2015, Bowman posted pictures of her son's ATV on Facebook and made a statement about the theft, providing the information she had, and asking for others who had friends in the Jeanerette/New Iberia area to share her post.

On or about July 2, 2015, Loston was arrested by the St. Mary Parish's Sheriff's Office for the crime of larceny or theft of an ATV. However, the charges were later dismissed.

Subsequent to Loston's arrest, Bowman posted a photograph of him on Facebook with the words above the picture, "This is thug that has Cody's." Bowman does not recall making the post, and it is no longer on her Facebook account.

On June 15, 2016, Loston brought suit in the United States District Court, Western District of Louisiana, Lafayette Division, asserting claims against the St. Mary Parish Sheriff's Office, Sheriff Mark A. Hebert, Sheriff Deputy Sennet Wiggins, Sheriff Deputy Beau Martin (collectively "the Sheriff's Office Defendants"), and Bowman. Loston alleges that the Sheriff's Office Defendants, operating under the color of law, wrongfully abused the judicial process to have him arrested and subsequently jailed for felony theft of an ATV. Loston further alleges that Bowman publicly defamed him by "circulating false allegations on social media resulting in thousands of views by persons in the community and beyond." [Doc. No. 1, ¶ 7].

Loston further alleges that, "[a]s a direct result of Defendants' misconduct, which resulted in Plaintiff's wrongful arrest, and detention, Plaintiff sustained substantial damages." *Id.* at ¶ 8.

Loston brought suit against Bowman for the following:

  A. In making false and defamatory statements;

B. In making false and defamatory statements and publishing same on social media that she knew or should have known would reach a wide variety of the public;

C. In causing embarrassment and injuries to Plaintiff in damaging his reputation; and

D. All other acts of negligence, etc. that will be shown at the trial of this matter.

[Doc. No. 1, ¶ 36].

On December 21, 2018, Judge John W. deGravelles granted summary judgment in favor of the Sheriff's Office Defendants and dismissed all claims against them. He further denied Bowman's Motion for Summary Judgment, finding that there was a genuine issue of material fact whether she committed the tort of defamation of Louisiana law. He took a Motion for Summary Judgment filed by Bowman's homeowner's insurer, Allstate Indemnity Co. ("Allstate") under advisement.

On April 2, 2019, the matter was reassigned to the undersigned.

On April 5, 2019, the Court issued a Ruling and Judgment granting Allstate's Motion for Summary Judgment. The Court found that the homeowner's insurance policy issued by Allstate to Bowman does not provide coverage for the claims asserted by Loston and that Allstate did not have a duty to defend Bowman. Therefore, the Court dismissed the claims against Allstate. [Doc. Nos. 107 & 108].

On May 15, 2019, Bowman filed the instant Motion for Summary Judgment, re-urging its arguments that Loston's defamation claim against her fails as a matter of law. Loston responded, first urging the Court not to consider Bowman's Motion for Summary Judgment, further moving the Court to strike Bowman's affidavit and attachments, and then opposing the Motion for Summary Judgment substantively. Both motions are ripe for review.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "'material' if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "'genuine' if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party." *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Motion to Strike

In his Motion to Strike, Loston objects to the Court's consideration of Bowman's Motion for Summary Judgment at all and, alternatively, moves to strike Bowman's affidavit and attachments.

First, to the extent that Loston objects to the Court's consideration of the second Motion for Summary Judgment, under Rule 54(b) the Court has the right review an order any time prior

to final judgment. Loston correctly points out that Bowman previously filed a motion for summary judgment on the defamation claim against her. The motion was presented to then-presiding judge, and he denied the motion at that time.

While the Federal Rules of Civil Procedure do not recognize a motion for reconsideration *per se,* a motion challenging an order prior to final judgment may be filed under Rule 54. Rule 54(b) provides that any order "that adjudicates fewer than all the claims... [among] all the parties... may be revised at any time before the entry of a [final] judgment." FED. R. CIV. P. 54(b). "Under Rule 54[(b)], a district court has the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Iturralde v. Shaw Grp., Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013) (quoting *Melancon v. Texaco, Inc.*, 659 F2.d 551, 553 (5th Cir. 1981)) (citations omitted); *see generally Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 n. 14 (1983) (holding that "virtually all interlocutory orders may be altered or amended before final judgment if sufficient cause is shown"). An "order granting partial summary judgment [is] interlocutory," and, therefore, the Court must "analyze[] the motion for reconsideration under Rule 54(b) . . . instead of Rule 59(e), which applies to final judgments." *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017). Courts evaluate motions to reconsider interlocutory orders under a "less exacting" standard than Federal Rule of Civil Procedure 59(e), which applies only to final judgments, but, nevertheless, look to similar considerations for guidance. *See HBM Interests, LLC v. Chesapeake Louisiana, LP*, No. 12-1048, 2013 WL 3893989 (W.D. La. July 26, 2013) (quoting *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002)); *Sw. Louisiana Hosp. Ass'n v. BASF Const. Chemicals*, LLC, No. 2:10-CV-902, 2013 WL 1858610 (W.D. La. Apr. 29,

2013) (quoting *Livingston Downs*, 259 F. Supp. 2d at 475). Therefore, in determining whether to grant the motion, the Court evaluates whether there are "manifest errors of law or fact upon which judgment is based[,]" whether "new evidence" is available, whether there is a need "to prevent manifest injustice," or whether there has been "an intervening change in controlling law." *HBM Interests,* 2013 WL 3893989, at *1 (internal quotation marks and citations omitted).

In this matter, the case was reassigned to the undersigned shortly after the prior judge found a genuine issue of material fact for trial on the defamation claim. Because there are no written reasons for the ruling in the record, the undersigned does not know Judge deGravelles' analysis. The only statement indicates that he found that Bowman's statement about Loston was defamatory *per se* because she accused him of criminal conduct. There is no indication that Judge deGravelles had the opportunity to consider whether Bowman rebutted that presumption. Moreover, Bowman has produced additional evidence to support the motion, which was not apparently considered by Judge deGravelles. Finally, Bowman has explained that she did not have screenshots of her Facebook posts at the time of the first Motion for Summary Judgment and did not even remember making the posts. Given this set of circumstances, to the extent Loston objects to the Court's consideration of this second Motion for Summary Judgment, the objection is DENIED.

Second, to the extent that Loston moves the Court to strike Bowman's affidavit and attachments as improper, the Court finds that the affidavit and attachments are admissible under Rule 56(c)(4), and that Bowman is not prohibited from offering testimony by affidavit merely because Loston's counsel has not deposed her. Loston argues that the affidavits and attachments should be stricken because Bowman cannot have personal knowledge of his Twitter posts, such

6

posts would be inadmissible hearsay, she is not competent to testify on such items at trial, and the admission of affidavit is improper because counsel cannot cross-examine her on its contents. To the extent that Twitter posts were made from Loston's account, they can be offered as admissions against interest and non-hearsay under Federal Rule of Evidence. Further, Bowman properly averred on how she obtained the posts. Even so, the Court notes that it has not relied on the objected-to attachments in reaching a decision in this case, and Loston does not argue that the other statements are based on a lack of personal knowledge or are otherwise inadmissible. Finally, Loston had the right for his counsel to depose Bowman during the years this case has been pending, and he apparently chose not to do so. His failure to depose Bowman does not prevent her from offering testimony via affidavit. In fact, even if Bowman had been deposed, she could offer testimony by affidavit, as long as her affidavit supplemented, rather than contradicted, her prior deposition testimony. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996) (citation omitted). Loston has not demonstrated that Bowman's affidavit should be stricken, and Bowman has explained why an affidavit was necessary. Accordingly, Loston's Motion to Strike the affidavit and attachments is also DENIED.

### C. Defamation

Defamation is a tort involving "the invasion of a person's interest in his or her reputation and good name." *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004). "Louisiana courts have determined that a statement is 'defamatory' if it 'tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise exposes the person to contempt or ridicule.'" *Hoffman v. Bailey*, 257 F. Supp. 3d 801, 821 (E.D. La. 2017).

> In Louisiana, defamatory words have also traditionally been defined into two categories: those that are "defamatory *per se*" and those that are simply "susceptible of a defamatory meaning." . . ."Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory *per se*." . . .When a plaintiff proves (1) the communication of words that are defamatory *per se* and (2) publication of those words to a third party other than the plaintiff (i.e. the first and second elements of a defamation claim), then the last elements of (3) falsity, (4) malice (or fault), and (5) injury are presumed. . . . Thus, in cases where the plaintiff demonstrates that the words published were defamatory *per se*, the burden shifts to the defendant to rebut the presumed elements. . . . When the words are not defamatory *per se*, the plaintiff must prove each element of the defamation tort. . . . Moreover, as stated *supra*, even if the plaintiff can make a prima facie showing of all essential elements of his defamation claim, "recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified."

*Hoffman,* 257 F. Supp. 3d at 821.

In this case, viewing the evidence in the light most favorable to the non-movant, the Court concludes, as did Judge deGravelles, that Bowman's statement about Loston was defamatory *per se* because she accused him of criminal conduct. Further, Bowman posted her statement on Facebook, thereby communicating her statement to a third person. As a result, there is a presumption of falsity, malice, and injury. However, the Court's analysis does not end there. For, even if statements are found to be defamatory *per se* as a matter of law, "the effect of such a finding would be simply to shift the burden to [the speaker] to rebut the presumed elements of falsity and malice (or fault)." *Id.* at 829.

"Malice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation." *Costello*, 864 So.2d at 143. "At least one Louisiana court has held that 'if the arrest itself is not actionable, neither is a charge of defamation to have arisen from that arrest.'" *Weg v. Gusman*, Civil Action No. 10-4198, 2011

WL 4965391, at * (E.D. La. Oct. 19, 2011) (quoting *Roche v. Aetna Cas. & Sur. Co.*, 303 So.2d 888, 890 (La.App.1975); *see also O'Brien v. Town of Glenmora*, 997 So.2d 753 (La. App. 2008)(upholding summary judgment on defamation claim for police officer defendants because they had probable cause to arrest complainant).

Here, Bowman has testified that her only goal was to obtain the return of her son's ATV. She does not know Loston and meant him no harm. While she does not remember making the post calling him a "thug," she believed him to be the person who stole her son's ATV after he was arrested. Even in his own allegations, Loston is clear that Bowman did not make any statements about him until he was arrested and charged with theft. *See* [Doc. No. 1, ¶¶ 28-29 (Plaintiff was subsequently arrested at the St. Mary Parish Sheriff's Office and charged with theft. . .**Subsequently,** Richelle Bowman posted a photograph of Plaintiff on Facebook and stated that he was the 'thug' who had stolen her son's ATV 4-wheeler.") (emphasis added)].

In response, Loston argues only that "[t]here is 'malice,' as [he] is referred to as a thug and the post was published on social media wherein several individuals could view said post, comment on said post and share said post, wherein the same could be done on other individuals' pages and/or via text message or other means if said post was screenshot." [Doc. No. 117, p. 5]. While Loston's argument is accurate, it does not raise a genuine issue of material fact for trial whether Bowman had a reasonable belief in her statement at the time it was made.

The Court finds that Bowman has provided sufficient evidence to rebut the presumption of malice by showing that she reasonably believed that Loston had stolen her son's ATV based on his arrest. Although the charges against Loston were later dismissed, Bowman avers that her statements "were based on my belief that I was telling the truth, and that the St. Mary Parish

9

Sheriff's office had conducted a proper investigation and arrested the man who stole my son's ATV." [Doc. No. 113-6, Bowman Affidavit]. In turn, Loston has failed to raise a genuine issue of material fact for trial that her evidence is false, lacking credibility, or otherwise to be challenged. Accordingly, Bowman's Motion for Summary Judgment is GRANTED, and the defamation claim against her is DISMISSED WITH PREJUDICE.[1]

III. CONCLUSION

For the foregoing reasons, Loston's Motion to Strike is DENIED, and Bowman's Motion for Summary Judgment is GRANTED. Loston's defamation claim against Bowman is DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 26th day of June, 2019.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[1] Given the Court's conclusion, it need not reach the remaining arguments in Bowman's Motion for Summary Judgment.